**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

FILED

97 AUG 19 PM 4:29

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| CLIFFORD E. HODGES d/b/a HODGES PEST CONTROL AND LANDSCAPING; HODGES PEST CONTROL COMPANY, INC., an Alabama Corporation, individually and d/b/a Hodges Pest Control, Inc.; and JUDY GALE HODGES, as Administrator and personal representative of the Estate of Clifford E. Hodges, deceased, | ] ] ] ] ] ] ] ] ] ] ] ] |
| | CV-96-N-1836-NE |
| Plaintiff(s), | ] ] ] |
| vs. | ] ] ] |
| JAMES E. MURPHREE; MARY CORAL MURPHREE; and ZURICH INSURANCE CO. US BRANCH, | ] ] ] ] ] ] ] |
| Defendant(s). | ] |

ENTERED

AUG 2 0 1997

**Memorandum of Opinion**

## I.    Introduction.

In this declaratory judgment action, plaintiffs Clifford E. Hodges d/b/a Hodges Pest Control and Landscaping and Hodges Pest Control, Inc. (collectively "Hodges") filed a complaint in the Circuit Court for Madison County, Alabama, seeking injunctive and declaratory relief. Specifically, they seek a declaratory judgment that the insurance policy they purchased from defendant Zurich Insurance Company U.S. Branch ("Zurich") affords them coverage for "claims of liability based upon property damage alleged due to the

25

action or inaction of Hodges while acting in its ordinary course of business." *Amended*

*Complaint* at 4.

Zurich removed the action to this court. On October 9, 1996, plaintiffs' counsel filed

a suggestion of death as to plaintiff Clifford E. Hodges, and the court granted plaintiffs'

motion to substitute Judy Gale Hodges, administrator and personal representative of the

Estate of Clifford E. Hodges, as a party plaintiff.

This matter is presently before the court on Zurich's motion for summary judgment,

filed on July 18, 1997. Zurich submitted its initial submission in support of the motion, but

the plaintiffs failed to respond.[1] Upon due consideration, the motion will be granted and

the action dismissed.

## II.    Statement of Facts.[2]

On March 1, 1996, defendants James E. Murphree and Mary Coral Murphree

(collectively, the "Murphrees") filed a complaint in the Circuit Court of Madison County,

Alabama. The Murphrees allege that on or about May 28, 1968, Mrs. Dean Murphree

entered into a contract with Hodges for the treatment of a residence located at 1313 Sierra

Boulevard, Huntsville, Alabama, for termites and power post beetles and that the contract

---

[1] According to Exhibit D to the court's April 23, 1997, scheduling order, the plaintiffs' responsive submission was due on August 11, 1997. *See Exhibit D* at 1 ("The opponent's responsive submission shall be filed not later than 21 days [after the motion for summary judgment is filed]."). On August 13, 1997, the plaintiffs filed a motion seeking an extension of time in which to file their response. Because the proposed submission had little bearing on the construction of the insurance policy at issue, and for additional reasons, the court denied the motion.

[2] According to Exhibit D, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment." *Exhibit D* at 4 (emphasis and footnote omitted). The plaintiff failed to submit a response; thus, Zurich's initial statement of facts in its entirety is deemed admitted for purposes of the motion.

2

required Hodges to make yearly inspections.  The Murphrees further allege that Hodges

inspected the property annually for subterranean termites, power post beetles, carpenter

ants, control of dry rot, and soil covers and that Hodges issued annual inspection reports

stating that the property was free from dry rot fungus.  The Murphrees contend that they

acquired ownership of and took residence in the property in 1973 and that the pest control

contract with Hodges remained in full force and effect.  They state that in June 1995, they

became aware that the floor joists of the property were dry rotted and that they had to

expend $38,188.95 to repair the resulting structural damage.

The contract Hodges had with Ms. Murphree and later the Murphrees specifically

stated that Hodges would "treat the building" located on the property "for termites" and

described the treatment.  *Defendant's Exhibit 5* at 1.  The contract provided for "one

termite recheck" to be "made at the end of the 12 months period" and that retreatment of

reinfested portions of the building would be performed free of charge.  *Id.*  The contract

made no reference to inspections for dry rot.

At all times pertinent to this action, there existed a Commercial General Liability

("CGL") insurance policy issued by Zurich insuring Hodges Pest Control Company for

certain losses and claims.[3]  The policy's schedule states that "[i]t is hereby understood and

agreed that the endorsements shown below are attached to and made part of the policy"

and contains a list of sixteen itemized endorsements.  *Defendant's Exhibit 6* at 2.  The

Schedule of Operations Endorsement, Form Number U-GL-139-B (7/88), describes the

---

[3] The Policy was numbered GLO 1456257-07.

hazards as "Extermination - Including Products or Completed Operations" and "Fumigation - Including Products and/or Completed Operations." *Id.* at 3. The CGL Occurrence Declaration Endorsement, Form Number U-GL-D-140 (10/86), describes Hodges' business as "Pest Control," *id.* at 1., while Endorsement Form Number CG 2264 (11/85) characterizes the business as "Exterminating and Fumigating Operations." *Id.* at 8.

The CGL Pest Control Property Damages Liability Coverage Form, Form Number U-GL-218-A CW (5/93), indicates that "[v]arious provisions in this policy restrict coverage" and warns the insured to "[r]ead the entire policy carefully to determine rights, duties and what is and is not covered." *Id.* at 11. That same endorsement provides that Zurich "will pay on behalf of the insured those sums that the insured becomes legally obligated to pay because of 'property damage' which arises from a 'pest' inspection." *Id.* It further explains that "[i]nspections must be made by the insured during our policy period, within the 'coverage territory,' and during the conduct of the insured's business as a 'pest' control contractor," *Id.* Finally, it states that the "'property damage' must be caused by an 'occurrence' . . . within twelve (12) months of the date of the insured's last inspection." *Id.* The endorsement defines an "occurrence" as "[a]n active 'pest' infestation of property, including continuous or repeated exposure to substantially the same general harmful conditions, which happens after inspection by the insured"; defines "pest" as "[t]ermite or carpenter ants"; and defines "property damage" as "[a]ny 'pest' damage, which was not indicated on the [insured's] inspection report, but should have been discovered by the insured through a routine inspection, necessitating repair or replacement of damage to real property, and where live active 'pest' infestation is found." *Id.* at 14.

4

The Inspection Coverage Endorsement provides that the CGL policy excludes coverage for punitive and exemplary damages and property damage existing at the time of inspection. *Id.* at 12.

## III.    **Summary Judgment Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict).  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV. Discussion.

### A. Extent of Policy Coverage.

The plaintiffs claim that the CGL insurance policy Hodges purchased from Zurich insures them against their allegedly negligent inspections of the Murphree residence for dry rot fungus. Zurich argues, on the other hand, that the policy is controlled by the Pest Control Property Damage Liability Coverage Form ("Pest Control Liability") endorsement. Zurich contends that this endorsement alters the CGL policy's coverage, its definitions of certain terms, and liability for any one occurrence. *Defendant's Initial Submission* at 1-2.

The first sentence of the Pest Control Liability endorsement warns Hodges that "[v]arious provisions in this policy restrict coverage" and advises Hodges to "[r]ead the

7

entire policy carefully to determine rights, duties and what is and is not covered."
*Defendant's Exhibit 6* at 11. The other endorsements to the CGL policy contain different warnings. Many of them instruct, "This endorsement changes the policy. Please read it carefully," *see, e.g., id.* at 7, 8, 15, 17, 18, 31, 32, 33, 35, while others of them advise that they "change[ ] such insurance as is afforded by provisions of the . . . Commercial General Liability Policy." *See, e.g., id.* at 4, 6.

According to Alabama law,[4] courts construe insurance contracts in a manner to give effect to the intent of the parties; however, any ambiguities in the policy are to be resolved in favor of the insured. *Billups v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 352 So. 2d 1097, 1102 (Ala. 1977). Whether a clause in an insurance policy is ambiguous is a question of law. *First Mercury Syndicate, Inc. v. Franklin County*, 623 So. 2d 1075, 1076 (Ala. 1993). The terms in an insurance policy are to be given a "rational and practical construction," *Anderson v. Brooks*, 446 So. 2d 36, 38 (Ala. 1984), and construed "in light of the interpretation that ordinary men would place on the language used therein." *Universal Underwriters Ins. Co. v. Marriott Homes, Inc.*, 238 So. 2d 730, 732 (Ala. 1970). "[I]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that adverse parties contend for different constructions does not mean that the

---

[4] In diversity cases, the choice of law rules of the forum state determine which state's substantive law applies. *American Family Life Assur. Co. of Columbus, Ga. v. United States Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989). In the instant case, federal jurisdiction rests on diversity, and Alabama is the forum state. Under Alabama choice of law rules, interpretation of insurance contracts is governed by the law of the place of execution. *American Nonwovens, Inc. v. Non Wovens Engineering, S.R.L.*, 648 So. 2d 565, 566 (Ala. 1994). The CGL policy at issue was delivered in Alabama; thus, Alabama substantive law controls.

disputed language is ambiguous." *Gregory v. Western World Ins. Co., Inc.,* 481 So. 2d 878, 881 (Ala. 1985).

Endorsements to a policy limit, modify, or exempt coverage. When an endorsement is attached to the policy at the time it was issued, it becomes part of the policy and takes precedence over the terms of the policy to which it is attached. *Commercial Std. Ins. Co. v. General Trucking Co.,* 423 So. 2d 168, 170 (Ala. 1982). In the instant case, the Pest Control Liability endorsement is attached to and made part of the CGL policy. It specifically admonishes the insured that its provisions *"restrict* coverage" of the CGL policy, *Defendant's Exhibit 6* at 11 (emphasis added), while the other endorsements attached to the policy state that their terms *change* the policy's provisions. The word "restrict" is not ambiguous. It is defined as "to confine within bounds:   restrain." *Webster's New Collegiate Dictionary* 987 (5th ed. 1977). To restrict something is clearly to limit it. The word "change," on the other hand, is defined as "to make different in some particular." *Id.* at 185-86. To change something is to alter it in some fashion, but not necessarily to restrict it. Nothing in the policy otherwise renders the word "restrict" ambiguous.   Thus, the Pest Control Liability endorsement plainly and by its own unambiguous terms limits the provisions of the CGL policy.

The CGL policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," *Defendant's Exhibit 6* at 29, and it defines "property damage" as ""[p]hysical injury to tangible property" and "[l]oss of use of tangible property that is not physically injured." *Id.* at 30. The CGL policy does not define "pest." *See id.* at 29.   The Pest Control Liability

endorsement, on the other hand, defines "occurrence" as "[a]n active 'pest' infestation of property, including continuous or repeated exposure to substantially the same general harmful conditions, which happens after inspection by the insured," *id.* at 14, and defines "property damage" as "[a]ny 'pest' damage, which was not indicated on the Inspection report, but should have been discovered by the insured through a routine inspection, necessitating repair or replacement of damage to real property, and where live active 'pest' infestation is found." *Id.* The endorsement defines "pest" as "[t]ermites or carpenter ants." *Id.* Nowhere does the policy, in either its body or in any endorsement, indicate that the term "pest" includes dry rot fungus, as the plaintiffs contend. Accordingly, because the Pest Control Liability endorsement unambiguously limits the terms of and takes precedence over the CGL policy, Hodges is insured for negligently inspecting for pests — that is, for termites and carpenter ants. If Hodges, as the Murphrees allege in their state court complaint, negligently inspected for dry rot fungus, the CGL policy Hodges purchased from Zurich does not cover for such negligence.

Alabama law recognizes the "reasonable expectation" rule, which states that an insured is "entitled to the protection which he may reasonably expect from the terms of the policy he purchases." *Aetna Cas. & Sur. Co. v. Chapman*, 200 So. 425, 427 (Ala. 1941). In the instant case, the plaintiffs bear the burden of proving to the court their reasonable expectation as to coverage of the CGL policy. They failed to respond to the motion for summary judgment; thus, they have not met their burden. Accordingly, the rule is inapplicable in this instance.

**B.    The Murphrees' Claim for Misrepresentation.**

The Murphrees' state court complaint alleges that Hodges misrepresented the terms of its inspection contract.  The Pest Control Liability endorsement does not include such tortious conduct within the definition of an occurrence.  Rather, by the endorsement's terms, the policy insures Hodges only for its negligent inspection for pests and not for any representations the company may make as to its contractual duties to a client. Accordingly, the CGL policy does not insure Hodges for any liability resulting from such misrepresentations.

**C.    The Murphrees' Claim for Punitive Damages.**

The Murphrees seek an award of punitive damages by the state court against Hodges.  It is undisputed, however, that the CGL policy specifically excludes punitive damages.  Thus, Zurich is not liable to Hodges for any punitive damages the state court may award in favor of the Murphrees.

**D.    Duty to Defend.**

Because the court has determined that the CGL policy does not cover any of the Murphrees' state court claims against Hodges, Zurich has no duty to defend Hodges against such claims.

**V.    Conclusion.**

Accordingly, Zurich's motion for summary judgment will be granted and the action dismissed.  The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___/9th___ of August, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE